In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00225-CR


______________________________




LOWMAN VERBEN LOWE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 196th Judicial District Court


Hunt County, Texas


Trial Court No. 22,663




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



 Lowman Verben Lowe appeals from his conviction for aggravated assault with a deadly
weapon. A jury convicted him and assessed his punishment at seven years' imprisonment. Lowe
alleges error is presented on several matters: (1) failing to properly instruct the jury on the law of
apparent danger, (2) ineffective assistance of counsel, (3) factual insufficiency of the evidence to
support the guilty verdict because the State did not disprove self-defense, and (4) legal and factual
sufficiency of the evidence supporting the jury finding that Lowe used a deadly weapon. We affirm
the judgment of the trial court.

Background Facts

 The record indicates that the victim, Terrance Colbert, has a mental condition that causes him
to be combative unless he regularly takes his medication and that he is at best sporadic in his use of
prescribed medications for that condition. Colbert testified he had been hospitalized for mental
conditions a number of times. Antonio Landers was one of a group of three or more juveniles who,
Colbert thought, wanted to fight him. Colbert called police and reported that some juveniles were
"picking on him." A police officer arrived and talked to the group in an attempt to calm them down,
and then the officer left. 

 Lowe (Antonio's father) drove up and asked Colbert whether they were fighting. Colbert told
Lowe no, and then Colbert turned away to argue with yet another person. As that argument
progressed, Colbert realized that he had been cut in the throat because he saw the blood. He
identified Lowe as the person who had cut him. Colbert testified that he then ran away and that the
man who cut him (Lowe) chased him. This incident occurred on Church Street and Colbert went
to a different street for help, where someone called an ambulance which took him to the hospital. 
Colbert testified he felt no pain until after the cut was treated at the hospital. Officer James
Hamilton testified that, when he arrived, Colbert was bleeding severely and that Hamilton was afraid
he would bleed out and die before an ambulance arrived.

 Lowe also testified. Although he admitted cutting Colbert, his version of how the events
transpired was markedly different. Lowe testified that he took Helen Landers, Antonio's mother, to
the house on Church Street because she told him someone was "trying to jump on" their son. While
she was calling the police, Lowe circled the block. When he got back around, he saw Colbert
arguing with Ms. Landers. Lowe testified he recognized Colbert as the person who, a few nights
before, had been bragging about not being afraid of anybody and how he would cut anyone with his
box cutter. Lowe testified that he tried to defuse the situation because he was worried about
Ms. Landers and that Colbert then began cursing him. Lowe testified that Colbert was trying to stick
his hand in his pocket and that, when Lowe turned to leave, Colbert swung at him. At that time,
Lowe thought Colbert was trying to cut him, so he tried to catch Colbert's arm, and then he, Lowe,
Ms. Landers, and Billie (a mother of another juvenile) all fell to the ground. Lowe admitted he could
not tell what Colbert had in his hand because his back was turned. Lowe pulled out his own
pocketknife, and Colbert was cut during the fracas. Colbert stood up and ran. Lowe gathered his
tools and then went to the police station and turned himself in. 

 1. Apparent Danger Jury Charge 

 Lowe first contends the trial court committed reversible error by failing to provide the jury
with a correct instruction on the law of apparent danger. As noted above, Lowe admitted cutting
Colbert, but argued that he was entitled to a charge on self-defense and apparent danger because of
his reasonable fear that Colbert was using a box cutter. Lowe argues that the charge was inadequate
because it did not correctly instruct the jury on the law of apparent danger. This area of the law is
one that this Court has had occasion to revisit repeatedly. Walter v. State, No. 06-05-00014-CR, ___
Tex. App. LEXIS ___ (Tex. App.--Texarkana Nov. 2, 2006, no pet. h.); Wilson v. State, 179 S.W.3d
240, 252 (Tex. App.--Texarkana 2005, no pet.).

 Lowe complains the charge, as given, did not adequately inform the jury that apparent danger
was to be measured from the standpoint of the defendant alone, or to state that, if Lowe reasonably
believed from that standpoint that Colbert was using deadly force against him, the jury should
acquit. (1) The charge reads as follows:

 Upon the law of self defense you are instructed that a person is justified in
using force against another when and to the degree he reasonably believes the force
is immediately necessary to protect himself or a third person against the other's use
or attempted use of unlawful force and he reasonably believes to be threatening the
third person he seeks to protect, and the actor reasonably believes that his
intervention is immediately necessary to protect the third person.

 

 The use of force against another is not justified in response to verbal
provocation alone.


 A person is justified in using deadly force against another:


 (1) if he would be justified in using force against the other; and


 (2) if a reasonable person in the defendant's situation would not have
retreated; and

 

 (3) when and to the degree he reasonably believes the deadly force is
immediately necessary;

 

 (a) to protect himself against the other's use or attempted use
of unlawful deadly force;. . . 


 . . . . 


 "Reasonable belief" means a belief that would be held by an ordinary and
prudent person in the same circumstances as the defendant.

 

 . . . . 


 Now, therefore, . . . if you believe from the evidence beyond a reasonable
doubt . . . but you further find from the evidence, or have a reasonable doubt thereof,
that the defendant reasonably believed as viewed from his standpoint alone that
deadly force when and to the degree used, if it was, was immediately necessary to
protect himself or a third person he seeks to protect against the use or attempted use
of unlawful deadly force to prevent the imminent commission by the said Terrance
Regal Colbert of aggravated assault; and that at such time a reasonable person in the
defendant's situation would not have retreated, you will acquit the defendant . . . .

 

 You are further instructed, however, that if you believe from the evidence
beyond a reasonable doubt that at the time and place in question the victim was not
using or attempting to use unlawful force on a third person, and that the defendant
did not reasonably believe that deadly force when and to the degree used, if it was,
was immediately necessary to protect a third person against the use or attempted use
of unlawful deadly force, either real or apparent, as viewed from his standpoint alone,
or that a reasonable person in the defendant's position at that time would have
retreated, then you will find against the defendant on his plea of self-defense.


 The standard of review for errors in the jury charge depends on whether the defendant
properly objected. Mann v. State, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); Gornick v. State, 947 S.W.2d 678, 680
(Tex. App.--Texarkana 1997, no pet.). If a proper objection was raised, reversal is required if the
error is "calculated to injure the rights of defendant." Almanza, 686 S.W.2d at 171. In other words,
an error that has been properly preserved is reversible unless it is harmless. Id. 

 In this case, no objection was raised--thus, assuming that we find error, we must also find
that it was egregious. This case raises issues quite similar to those we discussed in our recent
opinion in Wilson. In that case, the appellant claimed the trial court erred in failing to instruct the
jury on the doctrine of apparent danger. Wilson made written requests for jury charge instructions,
one of which would have contained language that a person "has a right to defend his life and person
from apparent danger . . . ." Wilson, 179 S.W.3d at 252. The trial court refused the proposed
language and instead gave an instruction on self-defense containing definitions of "reasonable
belief," "deadly force," and an instruction on when a person is justified in using deadly force.

 In the present case, no additional instructions were requested, and the court did give a
definition of reasonable belief, deadly force, and self-defense, including justification for the use of
force.

 In Valentine v. State, 587 S.W.2d 399, 401 (Tex. Crim. App. [Panel Op.] 1979), the Texas
Court of Criminal Appeals held that the concept of apparent danger was properly presented to the
jury where the charge instructed that the defendant's conduct would be justified if he or she
reasonably believed that the deceased was using or attempting to use unlawful deadly force against
the defendant at the time of the shooting. Id. The court also defined the term "reasonable belief." (2) 
In Valentine, the Texas Court of Criminal Appeals held that, by defining the term "reasonable belief"
as it did, the court instructed the jury that a reasonable apprehension of danger, whether it be actual
or apparent, is all that is required before one is entitled to exercise the right of self-defense against
his or her adversary. Id. The jury charge in the present case instructed the jury that Lowe's conduct
was justified if he reasonably believed that Colbert was using unlawful deadly force against either
him or a third person.

 Error has not been shown. The contention of error is overruled.

 2. Ineffective Assistance of Counsel

 Lowe next contends that his counsel was ineffective, under the Strickland standards, because
he did not object to the charge in connection with the apparent danger issue, and also because he did
not adequately bring that defense to the jury's attention. Strickland v. Washington, 466 U.S. 668
(1984). To prevail on this claim, an appellant must prove by a preponderance of the evidence
(1) that counsel's representation fell below an objective standard of reasonableness and (2) that the
deficient performance prejudiced the appellant's defense. We have concluded that the charge was
not erroneous. In the absence of error by counsel, we cannot conclude that he was constitutionally
ineffective for failing to object to the charge.

 As far as strategic or tactical reasons for counsel's action or inaction, in the absence of direct
evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic
motivation if any can be imagined. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). 
We will not conclude the challenged conduct constitutes deficient performance unless the conduct
was so outrageous that no competent attorney would have engaged in it. Id.; see Thompson v. State,
9 S.W.3d 808, 814 (Tex. Crim. App. 1999). The fact that counsel did not emphasize a particular
aspect of the proceeding in argument to the jury is not a matter that this Court can readily analyze,
especially when the matter was raised--but not to the extent that appellate counsel, with the benefit
of hindsight, would find most effective. We are not convinced from the record before us that the
challenged conduct was so outrageous that no competent attorney would have engaged in it. 

 The contention of error is overruled.

 3. Factual Insufficiency--Disprove Self-Defense

 Lowe next contends the evidence is factually insufficient to support the verdict because the
State did not adequately disprove his claim of self-defense beyond a reasonable doubt. 

 The defendant has the initial burden of producing evidence to raise self-defense. Then the
State has the final burden of persuasion to disprove it. Saxton v. State, 804 S.W.2d 910, 914 (Tex.
Crim. App. 1991). The State is not obligated to offer evidence refuting a claim of self-defense;
rather, the State is required merely to prove its case beyond a reasonable doubt. Saxton, 804 S.W.2d
at 914.

 Self-defense is a fact issue to be determined by the jury. Id. at 913-14. As the trier of fact,
the jury is the sole judge of the credibility of the witnesses and is free to believe or disbelieve all,
part, or none of any witness' testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986). "A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory." 
 Saxton, 804 S.W.2d at 914. In conducting a factual sufficiency review, we view the evidence in
a neutral light and will set aside the verdict only if the jury was not rationally justified in finding guilt
beyond a reasonable doubt. See Watson v. State, No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040
(Tex. Crim. App. Oct. 18, 2006).

 Counsel points out a number of possible shortcomings in the State's investigation of the
incident--a failure to search the area for a discarded box cutter and a failure to obtain names and
statements from witnesses. There was evidence of the injury, the type of injury, and the person who
inflicted it, as well as the surrounding circumstances. There was no evidence that Colbert had a
weapon at the time, even though there was evidence that he had made threatening comments in
general at an earlier time and claimed that he carried one (evidently while exhibiting it). 
Nevertheless, the jury was within its purview to review the evidence and determine that Lowe did
not exercise deadly force in defense of either himself or a third party, and that the evidence of
justification because of apparent danger was not sufficient to support his self-defense theory. 

 The contention of error is overruled.

 4. Sufficiency of Evidence on Deadly Weapon Finding

 Lowe next contends there is factually and legally insufficient evidence to sustain the jury
finding that the knife, in its use and intended use, was a deadly weapon. His argument is based on
the differing language found in the jury charge. The indictment alleged that the knife was a deadly
weapon because of the manner of "its use and intended use." (Emphasis added.) The jury charge
defined a deadly weapon as anything that in the manner of "its use or intended use" can cause death
or serious injury. (Emphasis added.) The application section of the charge tracked the indictment,
directing the jury to find him guilty if he used a deadly weapon that "in the manner of its use and
intended use" can cause death or serious injury. (Emphasis added.)

 Lowe argues the application paragraph of the jury charge raised the burden of the State and
required it to prove that Lowe used the knife and intended the knife to be used as a deadly weapon. 
We disagree. Section 1.07(a)(17)(B) defines deadly weapon as: "anything that in the manner of its
use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann.
§ 1.07(a)(17)(B) (Vernon Supp. 2006). The Texas Court of Criminal Appeals has recently
commented on the meaning of this section. 

 The provision's plain language does not require that the actor actually intend death or serious
bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would
be capable of causing death or serious bodily injury. Bailey v. State, 38 S.W.3d 157, 159 (Tex. Crim.
App. 2001) (quoting McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)). 

 Here, the jury was charged that, to find Lowe guilty of using a deadly weapon, the State was
required to prove that Lowe used a knife to cause bodily injury to Colbert and in the manner that
Lowe used and intended to use the knife, the knife was capable of causing death or serious bodily
injury. The jury did not have to conclude Lowe used the knife and intended the knife to be used as
a deadly weapon. 

 In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In a factual sufficiency review, the appellate court views all the evidence in a
neutral light and determines whether the evidence supporting the verdict is so weak that the jury's
verdict is clearly wrong and manifestly unjust or whether the great weight and preponderance of the
evidence is contrary to the verdict. Id.; see Watson, 2006 Tex. Crim. App. LEXIS 2040; Clewis v.
State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

 A knife is not a deadly weapon per se, and as such, the jury was instructed that a deadly
weapon is "anything that in the manner of its use or intended use is capable of causing death or
serious bodily injury." See Tex. Penal Code Ann. § 1.07(a)(17)(B) (defining a deadly weapon);
McCain, 22 S.W.3d at 503 (holding that "the mere carrying of a butcher knife during such a violent
attack . . . was legally sufficient to show that the butcher knife was a deadly weapon"). Factors to
consider in determining whether the knife was capable of causing death or serious bodily injury
include (1) the size, shape, and sharpness of the knife; (2) the manner in which the appellant used
the weapon; (3) the nature or existence of inflicted wounds; (4) testimony of the knife's
life-threatening capabilities; (5) the physical proximity between the victim and the knife; and (6) the
words spoken by the appellant. See, e.g., Thomas v. State, 821 S.W.2d 616, 619-20 (Tex. Crim.
App. 1991); Tisdale v. State, 686 S.W.2d 110, 115 (Tex. Crim. App. 1984) (op. on reh'g).

 The phrase "used . . . a deadly weapon" during the commission of the offense means only that
the deadly weapon was employed or utilized in order to achieve its purpose. Tex. Code Crim.
Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2006); Patterson v. State, 769 S.W.2d 938, 941
(Tex. Crim. App. 1989). 

 There is no question that the weapon was a knife and that it was used to cut Colbert's throat. 
The evidence shows that Colbert was bleeding profusely and that his blood was all over the crime
scene. Officer Hamilton followed a trail of Colbert's blood, and found onlookers mopping up the
blood. Hamilton described Colbert as bleeding profusely and said that he was afraid Colbert would
bleed out and die before help could arrive. This is both legally and factually sufficient to support
the jury's determination that the knife was, in the manner of its use and intended use, capable of
causing death or serious bodily injury and, thus, a deadly weapon. The contention of error is
overruled.

 We affirm the judgment.



 Jack Carter

 Justice


Date Submitted: August 4, 2006

Date Decided: November 29, 2006


Publish

1. Counsel correctly points out that the Texas Court of Criminal Appeals has recognized that
a person has the right to defend against apparent danger to the same extent as if the danger was real. 
See Hamel v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).
2. "Reasonable belief" was defined in Valentine as "a belief that would be held by an ordinary
and prudent person in the same circumstances as the defendant." Valentine, 587 S.W.2d at 401. In
the instant case, the trial court used exactly the same definition.